Hubert Van Aukin v. Catharine O'Connor and William P. Ratigan, adm'rs for Jeremiah O'Connor.

*Trover against middleman—Evidence—Res gestæ—Prices current.*

In trover against administrators for merchandise delivered to their decedent, defendants testified without objection that their decedent was

to send it to certain dealers for plaintiff's benefit with instructions not to sell it at less than a stated sum; that he received a letter from the dealers finding fault with the quality of the merchandise, reporting current prices, and asking how to deal with it; that he showed the letter to plaintiff who again directed that the merchandise should not be sold for less than the sum stated, but never gave any orders to have it got back. *Held* that as the case depended on the arrangements made on or after the receipt of the goods, by decedent, defendant could show the transactions and all his conversations bearing on the subject; he could also show the report of prices current as part of the *res gestæ*, and could show by decedent's clerk, who received the merchandise from plaintiff, the agreement that it should be sent to the dealers, who were to determine quality and price.

Error to Wayne. (Jennison, J.) April 12.—April 18.

TROVER. Defendants bring error. Reversed.

*Atkinson & Atkinson* for appellants.

*Conely, Maybury & Lucking* for appellees. Where a writing was uncertain as to the parties to the contract, it was proper to permit parol evidence to be given as to who they were: *Facey v. Otis* 11 Mich. 213; where there was a written order which contained within itself a description of a mill for which the order was given, the time when the mill was to be delivered, the price of the mill, and the length of time the mill might be held for trial, parol evidence was admissible to show what the contract was: *Phelps v. Whitaker* 37 Mich. 72, 77.

CAMPBELL, J. Plaintiff sued the decedent for the alleged conversion in May, 1880, of seven cases of oil of peppermint. The oil was left with O'Connor in two parcels,—three cases in July, 1877, and four in September, 1877. The former was receipted for as received "to be accounted for at New York prices, less commission." The latter was a simple receipt, and did not show any purpose or condition. It is agreed that it was known the oil was to be sent to New York and sold. It is disputed whether it was sent on plaintiff's account, or whether O'Connor was the only person with whose conduct plaintiff was concerned. The oil was

actually sent to the New York firm of Horner & Quitting, who seem to have failed afterwards, and the oil was left in the hands of some receiver.

In 1879 plaintiff sued O'Connor in assumpsit, alleging the transaction to have been a sale. Being defeated in this action he made a demand in May, 1880, and now sues in trover for a conversion by reason of non-delivery on that demand.

Defendant, without objection, testified that the arrangement was that he should send the oil to Horner & Quitting for Van Aukin's benefit, with instructions not to sell it under two dollars a pound. He further testified to receiving from them a letter finding fault with the quality of the oil, reporting current prices, and asking advice how to deal with it. That he showed this to Van Aukin, who directed him that the oil should not be sold under two dollars, but gave no orders to have the oil sent back, but that they should hold the oil unless sold at his figures. That no instructions were ever given him to get the oil back before the demand in May, 1880, when O'Connor offered, if Van Aukin would pay expenses, to go to New York and try to recover it.

The court below refused to allow the Horner & Quitting letter to be read, and refused to allow defendants to show by O'Connor's clerk, who received the oil, an agreement that the oil should be sent to Horner & Quitting, who were to determine quality and price.

Plaintiff swore that he considered the transaction with O'Connor as a sale at its date.

The case shows that the real controversy depended on the arrangements made upon or after the receipt of the oil by O'Connor. It was, therefore, competent for defendant to show the transactions and all his conversations bearing on the subject. As the New York report formed a part of those dealings, and on one theory of the case was a very important part of the res gestæ, it should not have been shut out. The testimony of the clerk of O'Connor was also very material, as if admitted and believed it would have entirely

destroyed plaintiff's theory.  As the main facts were kept from the jury we do not think it important to discuss questions which probably would not have arisen had that testimony been received, or would not have arisen in their present shape.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.